IN THE UNITED STATES DISTRICT COURT
FOR CONNECTICUT

| | |
|---|---|
| IN RE: LATEX GLOVE PRODUCTS LIABILITY LITIGATION | : <br> : <br> : |
| ANDREA HOGAN | :     Civil Action No: 3:01cv02426-CFD <br> : |
|     Plaintiffs, | : <br> : |
| v. | : <br> : |
| ALLEGIANCE CORPORATION, et al. | : <br> : <br> : |
|     Defendants | : |

**LOCAL RULE 56 (A) 1 STATEMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT MEDLINE INDUSTRIES, INC.**

Defendant Medline Industries, Inc. ("Medline") submits the following as the material facts as to which Medline contends there is no genuine issue to be tried, for purposes of Medline's Motion for Summary Judgment.

1. Plaintiff, Andrea Hogan, filed a Complaint in this Court on December 28, 2001, against defendants Allegiance Corp. and Medline.

   Record Source:   Docket Entry 1, Complaint [Exhibit A hereto].

2. Medline was served with the Summons and Complaint on January 28, 2002.

   Record Source:   Docket Entry 4, Return of Summons [Exhibit A hereto].

3. Plaintiff is a citizen and resident of Connecticut.

   Record Source:   Complaint ¶ 1, [Exhibit B hereto]; Plaintiff's Deposition, January 22, 2004, p. 6 ll. 2-5 [Exhibit C hereto].

4. Plaintiff has been a duly licensed registered nurse since 1995.

Record Source:    Plaintiff's Deposition, January 22, 2004, p. 12 ll. 14-22 [Exhibit C hereto].

5.    Plaintiff received her education and training at Bridgeport Hospital School of Nursing in the period September 1993 to June 1995, at which time she received her Registered Nurse degree and license.

Record Source:    Plaintiff's Deposition, January 22, 2004, p. 68 l. 24 to page 69 l. 4 [Exhibit C hereto].

6.    While attending Bridgeport Hospital School of Nursing, plaintiff received training in recognizing allergic symptoms.

Record Source:    Plaintiff's Deposition, January 22, 2004, p. 108 ll.6-17 [Exhibit C hereto].

7.    While attending Bridgeport Hospital School of Nursing, plaintiff understood that an allergy, in general, was something attacking the victim from outside the body by dermal and/or inhalant contact with the victim.

Record Source:    Plaintiff's Deposition, January 22, 2004, p. 115 l. 6- p. 116 l.8 [Exhibit C hereto].

8.    The symptoms of systemic Type I allergic reactions in which she was trained, at Bridgeport Hospital School of Nursing, included urticaria, hives, shortness of breath, rashes, edema, inflammation, runny nose, rhinitis, watery and red itching eyes, congestion and a feeling of throat closing.

Record Source:    Plaintiff's Deposition, January 22, 2004, p. 108 ll.18-22; p.112 l.12-p.114 l.2 [Exhibit C hereto].

9. While attending Bridgeport Hospital School of Nursing, plaintiff was also trained that allergic reactions could produce anaphylaxis in the victim, involving potential oxygen deprivation, throat and lung impairment, fainting, blood pressure decrease over a short period of time, and diarrhea.

    Record Source:    Plaintiff's Deposition, January 22, 2004, p. 114 l. 17 - p. 115 l. 5 [Exhibit C hereto].

10. Plaintiff ceased employment in direct patient healthcare in approximately December 1999.

    Record Source:    Plaintiff's Deposition January 22, 2004, p. 76 ll. 21-24 [Exhibit C hereto].

11. Plaintiff started her training as an attorney by attending law school starting in January 2001, and anticipates graduating with her law degree and finalizing the bar exam in July 2004.

    Record Source:    Plaintiff's Deposition, January 22, 2004 p. 91 l. 2 - p. 92 l. 6 [Exhibit C hereto].

12. Plaintiff was employed by Dr. James Guthrie in his office in Norwalk, Connecticut, in the period 1990-1996.

    Record Source:    Plaintiff's Deposition, January 22, 2004, p. 57 l. 13 – p. 58 l. 2 [Exhibit C hereto].

13. Plaintiff wore latex medical gloves in the period 1992-1996 while employed by Dr. Guthrie.

    Record Source:    Plaintiff's Deposition, January 22, 2004, p. 58 l.2 – p. 59 l. 24 [Exhibit C hereto].

14. From the time plaintiff started working for Dr. Guthrie, and to the present, plaintiff always knew that Medline brand gloves were the latex gloves she was wearing and to which she was exposed at Dr. Guthrie's office.

>   Record Source:    Plaintiff's Deposition, January 22, 2004, p. 65 ll.12-17, p. 68 ll. 13-19 [Exhibit C hereto].

15. Plaintiff has a firm recollection that she used Medline brand latex gloves during her clinical rotations while attending Bridgeport Hospital School of Nursing, testifying at her deposition that she remembered the Medline brand, even before she filled out the product identification questionnaire in this case.

>   Record Source:    Plaintiff's Deposition, January 22, 2004, p. 69 l. 22 – p. 72 l. 25 [Exhibit C hereto].

16. Plaintiff worked as a Registered Nurse at Stamford Hospital from August 1995 to December 1999.

>   Record Source:    Plaintiff's Deposition, January 22, 2004, p. 76 ll. 21-24 [Exhibit C hereto].

17. At Stamford Hospital, plaintiff was first assigned to the maternity division (post partum and anti-partum) until September, 1998, when she was assigned to Labor & Delivery.

>   Record Source:    Plaintiff's Deposition, January 22, 2004, p. 24 l. 13 - p. 25 l. 6; p.80 l.6- p. 81 l. 3 [Exhibit C hereto].

18. At her deposition, plaintiff testified she learned that human beings can develop an allergy to latex in the period 1996-1997, when Stamford Hospital Employee Health Department informed her.

>Record Source: Plaintiff's Deposition, January 22, 2004, p. 109 ll.8-12, 21-25 [Exhibit C hereto].

19. Before her employment was changed to Labor & Delivery, plaintiff realized that latex was giving her a problem, began to switch to using non-latex vinyl gloves at work and began to limit her exposure to latex outside of work.

>Record Source: Plaintiff's Deposition, January 22, 2004, p. 24 l. 13 - p. 25 l. 6; p. 41 ll.1-4; p. 81 l. 22 - p. 82 l. 19; p. 84 l. 20 - p. 85 l. 2 [Exhibit C hereto].

20. Throughout the time plaintiff was working at Labor & Delivery, she attempted to avoid contact with and inhaling the powder that came from co-workers' latex gloves, because she had learned, before she started at Labor & Delivery, that the powder could be a transfer agent for latex allergies.

>Record Source: Plaintiff's Deposition, January 22, 2004, p. 88 l. 5 - p. 89 l.7; p. 90 l. 16 - p. 91 l. 1 [Exhibit C hereto].

21. Plaintiff always knew that, for the time she worked at Stamford Hospital, she used and was exposed to the Medline brand of latex gloves.

>Record Source: Plaintiff's Deposition, January 22, 2004, p. 82 l. 4 - p. 83 l. 17; p. 84 l. 20 - p. 88 l. 4 [Exhibit C hereto].

22. In March 1996, plaintiff presented to Dr. Claudio Borghesan, a certified otolaryngologist, who identified plaintiff's medical records at his deposition.

>Record Source: Borghesan's Deposition, March 2, 2004, p. 6 l. 3 - p. 7 l. 23 [Exhibit D hereto]; Borghesan's Deposition Exhibits 1, 2, 3 [Exhibit E hereto].

23. At that time, plaintiff reported to Dr. Borghesan that she was allergic to latex gloves and powder and that her symptoms included popping/ itching ears, itching/tearing eyes, itching nose, wheezing, hives, eczema and sinus problems.

>   Record Source:   Borghesan's Deposition, March 2, 2004, p. 8 l. 11; p. 9 l. 12 - p. 10 l. 5; p. 11 l. 17 - p. 12 l. 14; p. 21 l. 15 - p. 23 l. 24 [Exhibit D hereto]; Borghesan's Deposition Exhibits 1-3 [Exhibit E hereto].

24. In her signed Allergy Questionnaire for Dr. Borghesan, plaintiff answered "Yes" to "do you think your occupation has anything to do with your symptoms."

>   Record Source:   Borghesan's Deposition Exhibit 1, p. 2 [Exhibit E hereto].

25. Dr. Borghesan treated plaintiff at that time for dermatitis, eczema and allergic rhinitis.

>   Record Source:   Borghesan's Deposition, March 2, 2004 p. 19 ll. 1-12 [Exhibit D hereto].

26. In April 1996, plaintiff presented to the Stamford Hospital emergency room for an acute allergic reaction at work, during which, according to the Emergency Room record countersigned by plaintiff, and her signed statement to her medical insurer, she suffered an anaphylactic reaction to an unknown agent, her entire body swelling and with urticaria, eyes swollen shut, and wheezing.

>   Record Source:   Plaintiff's Deposition, January 22, 2004, p. 149 l. 15 – p. 159 l. 7 [Exhibit C hereto]; Hogan Deposition Exhibit 1, p. 5 [Exhibit F hereto]; Hogan Deposition Exhibit 7 p. 12-13, [Exhibit G hereto].

27. In May 1996, plaintiff presented to Dr. Sekhar Chironomula, board-certified in internal medicine, and reported to him that she was allergic to gloves she was using as a nurse, and he treated her with a topical steroid cream.

  Record Source:  Chironomula's Deposition, March 3, 2004, p. 6 l. 2-12; p. 19 ll. 1-9; p. 20 l. 2 – 22; p. 21 ll. 15-19 [Exhibit H hereto].

28. On December 18, 1996 plaintiff presented to her gynecologist, Dr. Astrid Hoffman-Olsen, and reported a latex allergy to Dr. Hoffman-Olsen and a history of eczema.

  Record Source:  Astrid Hoffman-Olsen's Deposition, p. 10 l. 18 – p. 11 l. 1; p. 15 ll. 1-13; p. 16 ll. 4-5 [Exhibit I hereto]; Hoffman-Olsen Deposition Exhibit 1 p. 11-12, 14 [Exhibit J hereto].

29. At that time, plaintiff reported to Dr. Hoffman-Olsen that she had stopped using latex gloves at work because she believed she had an allergy to latex.

  Record Source:  Astrid Hoffman-Olsen's Deposition, p. 16 l. 20 – p. 17 l.4 [Exhibit I hereto]; Hoffman-Olsen Deposition Exhibit 1 p. 11-12, 14 [Exhibit J hereto].

30. In December 1996 and January 1997, plaintiff presented to Dr. Lawrence Blum, a board certified dermatologist, and reported to him that she was having reactions to latex gloves and to powdered gloves, with eczema and itching on the face and body, and recurrent hives, for which Dr. Blum treated her.

  Record Source:  Blum's Deposition, March 3, 2004, p. 6 l. 15 – p.7 l. 5; p. 10 l. 23 – p. 11 l. 2; p. 12 ll. 9-19; p. 13 ll. 8-14; p. 14 l. 11 – p. 15 l. 14 [Exhibit K hereto]; Blum Deposition Exhibit 1 [Exhibit L hereto].

31. Dr. Blum's diagnosis was peri oral dermatitis and atopic dermatitis.

  Record Source:  Blum Deposition, March 3, 2004, p. 10 ll. 11-15; p. 18 ll. 10-15 [Exhibit K hereto].

32. On September 8, 1997, in responding to a written questionnaire concerning respirator use at Stamford Hospital, Plaintiff wrote in her handwriting that she had a latex allergy for three years.

> Record Source:  Hogan's Deposition, January 22, 2004, p. 161 ll. 10-16; p. 162 l. 25 – p. 164 l. 2; p. 166 ll. 19-24 [Exhibit C hereto]; Hogan Deposition Exhibit 1 at p.18 [Exhibit F hereto]; Richlin's Deposition, March 16, 2004, p. 28 l. 11 – p. 29 l. 13 [Exhibit M hereto]; Sterling's Deposition, March 4, 2004, p. 19 ll. 2-21 [Exhibit N hereto].

33. On September 10, 1997, Plaintiff presented to Nurse Danielle Richlin, a licensed advanced practice Registered Nurse, at the Stamford Hospital Employee Health Department.

> Record Source:  Richlin's Deposition, March 16, 2004, p. 10 l. 1 – p. 11 l. 1; p. 19 ll. 14-17; p. 37 l. 1 – p. 38 l.15 [Exhibit M hereto].

34. Nurse Richlin had suggested this examination to Plaintiff a few days earlier when Nurse Richlin mentioned that Plaintiff should see her at Stamford Hospital Employee Health, when Plaintiff mentioned her dermatitis to Nurse Richlin.

> Record Source:  Plaintiff's Deposition, January 22, 2004, p. 164 l. 20 - p. 165 l. 11 [Exhibit C hereto].

35. Nurse Richlin's supervisor at that time was Robert Sterling, M.D.

> Record Source:  Richlin's Deposition, March 16, 2004, p. 17 ll. 23-25 [Exhibit M hereto]; Sterling's Deposition, March 4, 2004, p. 7 l.5 – p. 9 l. 10 [Exhibit N hereto].

36. On September 10, 1997, Nurse Richlin ordered a RAST test of plaintiff's blood serum for latex allergy testing.

>Record Source:    Richlin's Deposition, March 16, 2004, p.32 l. 16 – p. 33 l. 3; p. 33 l. 23 – p. 34 l. 20; p. 37 l. 24 [Exhibit M hereto]; Sterling's Deposition, March 4, 2004, p. 20 ll. 12-14 [Exhibit N hereto]; Richlin Deposition Exhibit 5 [Exhibit O hereto]; Richlin Deposition Exhibit 7 [Exhibit P hereto].

37. The clinical laboratory report dated September 23, 2997, for plaintiff's latex allergen RAST test reported plaintiff's level at "1924," a high positive result.

>Record Source:    Richlin's Deposition, March 16, 2004, p. 34 ll. 21 – 24 [Exhibit M hereto]; Sterling's Deposition, March 14, 2004, p. 20 ll. 15-24 [Exhibit N hereto]; Richlin's Deposition Exhibit 6 [Exhibit Q hereto]; Sterling's Deposition Exhibit 1 p. 20 [Exhibit R hereto].

38. On September 10, 1997, plaintiff was diagnosed with latex allergy, and Plaintiff's medical records recorded that Plaintiff reported a history of contact dermatitis, redness, hives, swelling, itchy hands and eyes and rhinitis with contact with latex products, and that she had one incident of shortness of breath and facial edema enhanced by allergy to wildflowers, which were tipped over nearby in vase, and had been taken to emergency department.

>Record Source:    Richlin's Deposition, March 16, 2004, p. 37 ll. 4-23; p. 45 l. 14 – p. 46 l. 4, [Exhibit M hereto]; Richlin Deposition Exhibit 7 [Exhibit P hereto]; Sterling Deposition, March 4, 2004, p. 27 l. 25 – p. 28 l. 8 [Exhibit N hereto].

39. On September 10, 1997, plaintiff supplied a written latex allergy history, in her handwriting, to Richlin, reporting contact dermatitis, eczema, rhinitis, redness, hives, swelling, dermatitis, itching, runny nose and hives in reaction to latex gloves.

      Record Source:      Plaintiff's Deposition, January 22, 2004, p. 35 ll. 3 – p. 36 l. 3 [Exhibit C hereto]; Richlin's Deposition, March 16, 2004, p. 37 l. 24; p. 51 l.20 - p. 54 l. 16 [Exhibit M hereto]; Sterling's Deposition, March 4, 2004, p. 22 ll. 11- 18 [Exhibit N hereto]; Richlin's Deposition Exhibit 7 [Exhibit P hereto], 8 [Exhibit S hereto]; Sterling Deposition Exhibit 1 p. 23 [Exhibit R hereto].

40.    On September 10, 1997, Nurse Richlin recommended to plaintiff that she get a Medic Alert tag and carry an epipen, discussed with her the avoidance of latex products and to utilize only latex-free gloves, and discussed with her how a latex allergy is increased with repeated exposure, and that this will exacerbate further. Plaintiff verbalized to Nurse Richlin an understanding of the serious nature of this issue.

      Record Source:      Richlin's Deposition, March 16, 2004, p. 37 l. 25 – p. 38 l. 15 [Exhibit M hereto]; Sterling's Deposition, March 4, 2004, p. 26 ll. 10-22 [Exhibit N hereto].

41.    Epipens and Medic Alerts were recommended by Stamford Hospital when the patient's life might be endangered by an allergic reaction.

      Record Source:      Sterling's Deposition, March 4, 2004, p. 22 l. 24 – p. 23 l. 17 [Exhibit N hereto].

42.    Plaintiff admitted this purpose for epipens and medic alerts, at her deposition.

      Record Source:      Plaintiff's Deposition, January 22, 2004, p. 9 ll. 5-15; p. 11 ll. 6-17 [Exhibit C hereto].

43.    Nurse Richlin consulted Dr. Sterling because of plaintiff's high positive RAST test, a history of an anaphylactic reaction, and her occupational exposure to latex every day.

>Record Source:    Richlin's Deposition, March 16, 2004, p. 39 l. 25 – p. 40 l. 24 [Exhibit M hereto].

44. Plaintiff was provided by Stamford Employee Health Department with a list of latex products to avoid at work and outside of work, as well as a listing of potentially cross-reacting foods, in September 1997.

>Record Source:    Sterling's Deposition, March 4, 2004, p. 23 l. 20 – p. 25 l. 6 [Exhibit N hereto].

45. On September 23, 1997, Nurse Richlin received the high positive RAST latex allergen results, and, after discussion with Dr. Sterling, advised plaintiff of the results, to avoid latex products, to carry epipen and medic alert, and to report any increased signs or symptoms.

>Record Source:    Richlin's Deposition, March 16, 2004, p. 38 ll. 16-23; p. 41 ll. 1-9 [Exhibit M hereto]; Richlin Deposition Exhibit 7 [Exhibit P hereto].

46. In the period January 1998 to June 1998, Plaintiff experienced hives and generalized urticaria while at work at Stamford Hospital.

>Record Source:    Plaintiff's Deposition, January 22, 2004, p. 199 l. 25 - p. 200 l. 7 [Exhibit C hereto].

47. In August, 1998, plaintiff twice reported to her dentists, Dr. Cooper and Dr. Sokolowski, orally and in patient questionnaires signed by her, that she was severely allergic to latex with anaphylaxis.

>Record Source:    Plaintiff's Deposition, January 22, 2004, p. 134 l. 17 - p. 135 l. 5; p. 136 l. 22 - p. 137 l. 9 [Exhibit C hereto]; Cooper's Deposition, April 13, 2004, p. 9 l.1 – p. 12 l. 13; p. 13 l. 12 – p. 14 l. 24 [Exhibit T hereto]; Cooper Deposition Exhibit 1, p. 3 [Exhibit U hereto]; Sokolowski Deposition April 13,

2004, p. 7 l.4 – p. 10 l. 11; p. 11 ll. 6 – 11 [Exhibit V hereto]; Sokolowski Deposition Exhibit 1 p. 4 [Exhibit W hereto].

48. Plaintiff realized that she had a severe latex allergy problem by December 25, 1998.

 Record Source: Plaintiff's Deposition, p. 43 l. 18 – p. 45 l. 2 [Exhibit C hereto].

49. At her deposition in this action, plaintiff claimed to have some short term memory loss and a "little fuzzy" long term memory due to a prescription medication she had been taking since April 2003.

 Record Source: Plaintiff's Deposition, January 23, 2004, p. 17 l. 10 – p. 19 l. 2; p. 20 l. 24 – p. 21 l. 16 [Exhibit X hereto].

50. Plaintiff's habit in relating her symptoms and her medical history to her healthcare providers is to be truthful.

 Record Source: Plaintiff's Deposition, January 22, 2004, p. 171 l. 17 - p. 172 l. 3 [Exhibit C hereto].

 Respectfully submitted,

 **JANSSEN KEENAN & CIARDI P.C.**

 By: s/ Henry H. Janssen
   Henry H. Janssen, Esquire
   One Commerce Square
   2005 Market Street, Suite 2050
   Philadelphia, PA 19103
   (215) 665-8888

and

**LORICCO, TROTTA & LORICCO, LLC**

s/ Ronald J. LoRicco, Sr.
Ronald J. Loricco, Sr., Esquire
216 Crown Street
New Haven, CT  06510
(203) 865-3123

13