UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDREA HOGAN, | : | NO.  3:03CV2426 (CFD) |
| v. | : | |
| ALLEGIANCE CORPORATION, ET AL. | : | JUNE 17, 2004 |

**ALLEGIANCE CORPORATION'S LOCAL RULE 56(A)1 STATEMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND JOINDER IN MEDLINE INDUSTRIES, INC.'S MOTION FOR SUMMARY JUDGMENT**

Allegiance Corporation incorporates the Motion by Defendant Medline Industries, Inc. for Summary Judgment, including the Memorandum of Defendant Medline Industries, Inc. in Support of Motion for Summary Judgment and the Local Rule 56(a)1 Statement in Support of Motion for Summary Judgment by Defendant Medline Industries, Inc. and all exhibits, dated May 28, 2004.  AC also submits these additional material facts as to which AC contends there is no genuine issue to be tried:

1.      Allegiance Corporation is a holding company.

Citation:  Affidavit of Brenda N. Buonaiuto, ¶2 (attached as Exhibit A).

2.      Allegiance Corporation has never designed, made, distributed, or sold rubber gloves.

Citation:  Affidavit of Brenda N. Buonaiuto, ¶2 (attached as Exhibit A).

3.      Allegiance Healthcare Corporation (n/k/a Cardinal Health 200, Inc.) does make rubber gloves, but Plaintiff did not sue AHC.

Citation: Complaint; Affidavit of Brenda N. Buonaiuto, ¶2 (attached as Exhibit A).

4.    Plaintiff cannot recall ever using or being exposed to an "Allegiance" rubber glove.

Citation: Plaintiff's Deposition, January 23, 2004, 87:15-88:3, 91:5-12, 92:24-93:5 (attached as Exhibit B); Affidavit of Brenda N. Buonaiuto, ¶3 (attached as Exhibit A); *also, see*, Local Rule 56(A)1 Statement in Support of Summary Judgment by Defendant Medline Industries, Inc., Facts 14, 15, and 21.

5.    There is no evidence in this action showing that "Allegiance" rubber gloves were present at any of Plaintiff's former places of education or employment.

Citation: Affidavit of Brenda Buonaiuto, ¶¶3-5 (attached as Exhibit A); Plaintiff's Responses to Defendant's Document Request Revised Merit Discovery First Set, Responses to Requests 8 and 12 (attached as Exhibit C).

Respectfully submitted,

Dated: June 17, 2004

HOWD & LUDORF

By _____
John J. Bogdanski
65 Wethersfield Ave.
Hartford, CT 06114-1190
860-249-1361

Attorneys for Allegiance Corporation

**CERTIFICATION**

        This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 17th day of June, 2004.


Timothy F. Butler, Esquire
Tibbetts, Keating & Butler, LLC
43 Corbin Drive
Darien, CT  06820

Anne K. Millham, Esquire
Letizia, Ambrose & Falls
One Church Street
New Haven, CT  06510

Frederick J. Trotta, Sr., Esquire
LoRicco Trotta & LoRicco, LLC
LoRicco Tower
216 Crown Street
New Haven, CT  06510


_____
John J. Bogdanski

**EXHIBIT A**

NS

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ANDREA HOGAN,                          :          NO.  3:03CV2426 (CFD)
                                       :
v.                                     :
                                       :
ALLEGIANCE CORPORATION, ET AL.         :

### AFFIDAVIT OF BRENDA N. BUONAIUTO

1.      I am Counsel at Drinker Biddle & Reath, LLP, co-counsel for defendant

Allegiance Corporation in this action.  I make this affidavit in support of Allegiance

Corporation's Motion for Summary Judgment and Joinder in Medline Industries, Inc.'s

Motion for Summary Judgment.  I have personal knowledge of the matters stated in this

affidavit and could testify to these matters if called as a witness.

2.      I have represented AC since February 1997.  AC is a holding company.

AC does not design, manufacture, sell, or distribute any products, including rubber

gloves.  Allegiance Healthcare Corporation (n/k/a Cardinal Health 200, Inc.) does make

rubber gloves; however, AHC is not named in this lawsuit.  Although I explained these

facts to Plaintiff's counsel Tim Butler, in 2003, he would not dismiss AC from this action.

3.      Defendants deposed Plaintiff Andrea Hogan on January 22 and 23, 2004.

Plaintiff could not identify "Allegiance" as a rubber glove she has ever used or been

exposed to at any time.  At the end of Plaintiff's deposition, I again requested a

voluntary dismissal of AC.  Notwithstanding that AC has never designed, made, sold, or

distributed rubber gloves, and that Plaintiff did not sue AHC and could not identify

"Allegiance" gloves as ones she has ever come into contact with at any time, Mr. Butler

again refused to dismiss AC.  Instead, he said that he first wanted to confirm that

"Allegiance" rubber gloves were not used at Stamford Hospital during Plaintiff's

employment.

4.    Over the next several weeks, Mr. Butler continued to represent to me that he was in talks with counsel for Stamford Hospital to determine whether the Hospital had any record of ever having purchased "Allegiance" rubber gloves.  Finally, in late February 2004, Mr. Butler told me that, based on his communications with counsel for Stamford Hospital, the Hospital had located no records of "Allegiance" rubber glove purchases and that the only possible "Allegiance" glove purchases Stamford Hospital had made were purchases of <u>non-latex</u> gloves in 1999.  Mr. Butler then affirmatively represented that Plaintiff would voluntarily dismiss AC from this action.  However, despite being provided with a Stipulation of Dismissal to sign, and several follow-up requests, Plaintiff's counsel has still failed to execute the Stipulation, leading to this Motion.

5.    During the telephonic Status Conference in this action, held on Tuesday, March 2, 2004, counsel for Stamford Hospital confirmed to the Court that the Hospital had no records regarding "Allegiance" glove purchases, stating that the Hospital's search was "inconclusive."  Despite ample opportunity, Plaintiff has produced no evidence to show that "Allegiance" rubber gloves were present at any of her former places of education or employment.

I declare under penalty of perjury that the foregoing is true and correct and that this affidavit was executed this _16th_ day of June, 2004, at San Francisco, California.

Brenda N. Buonaiuto

SWORN TO AND SUBSCRIBED
BEFORE ME THIS _16_ DAY OF JUNE
2004.

Notary Public

BRENDA J. MOJARRO
Commission # 1322173
Notary Public - California
San Francisco County
My Comm. Expires Sep 24, 2005

**EXHIBIT B**

NS

1

IN THE UNITED STATES DISTRICT COURT
FOR CONNECTICUT
------------------------------x
IN RE: LATEX GLOVE PRODUCTS
LIABILITY LITIGATION,

ANDREA HOGAN

            Plaintiff,

vs.                    Case No. 3:01cv02426
                      Date: January 23, 2004
ALLEGIANCE CORPORATION, ET AL,

            Defendants.
------------------------------x


DEPOSITION OF ANDREA HOGAN

The deposition of Andrea Hogan was
taken on January 23, 2004, at the Westin Hotel,
One First Stamford Place, Stamford,
Connecticut before Susan Wandzilak, Registered
Professional Reporter and Notary Public in the
State of Connecticut.


DEL VECCHIO REPORTING SERVICES, LLC
PROFESSIONAL SHORTHAND REPORTERS
117 RANDI DRIVE
MADISON, CONNECTICUT 06443

MADISON, CT 06443          HARTFORD, CT 06106
203-245-9583               800-839-6867

---

2

A P P E A R A N C E S

TIMOTHY F. BUTLER, ESQUIRE
     Tibbetts, Keating & Butler, LLC
     43 Corbin Drive
     Darien, Connecticut 06820

            Attorney for Plaintiff

HENRY H. JANSSEN, ESQUIRE
     Janssen & Keenan, P.C.
     One Commerce Square
     Suite 2050
     2005 Market Street
     Philadelphia, Pennsylvania 19103

            Attorney for Defendant Medline

BRENDA BUONAIUTO, ESQUIRE
     Alston & Bird, LLP
     1201 West Peachtree Street
     Atlanta, Georgia 30309

            Attorney for Defendant Allegiance

---

3

S T I P U L A T I O N S

IT IS HEREBY STIPULATED AND AGREED by
and between counsel representing the parties that
each party reserves the right to make specific
objections at the trial of the case to each and
every question asked and of answers given
thereto by the deponent, reserving the right to
move to strike out where applicable, except as to
such objections as are directed to the form of
the question.

IT IS HEREBY STIPULATED AND AGREED by
and between counsel representing the respective
parties that proof of the official authority of
the Notary Public before whom this deposition is
taken is waived.

IT IS FURTHER STIPULATED AND AGREED by
and between counsel representing the respective
parties that the reading and signing of the
deposition by the deponent is not waived.

IT IS FURTHER STIPULATED AND AGREED by
and between counsel representing parties that all
defects, if any, as to the notice of the taking
of the deposition are waived.

Filing of the Notice of Deposition with
the original transcript is waived.

---

4

I N D E X

TESTIMONY OF ANDREA HOGAN

    Direct Examination by Mr. Janssen        6

    Cross Examination by Ms. Buonaiuto       86

    Redirect Examination by Mr. Janssen      93

CERTIFICATE OF REPORTER                      98


E X H I B I T S

Hogan Exhibit 16                        47

85

1  was fine.  And then when they -- I realized it
2  was related to the carpeting and the insulation
3  of the carpeting and I was in the hallway and I
4  started wheezing.  I used my inhaler quite
5  frequently while that was going on to help with
6  the wheezing.
7      Q. Was there latex in the carpeting?
8      A. I don't know for sure but I am assuming
9  that there was.  I was fine until the carpeting
10  was installed.
11      Q. You know new carpeting exudes many
12  chemicals into the air.  You understand that.
13      Tell me all the bases that you have for
14  concluding that it was a latex -- that the carpet
15  was exuding latex causing these reactions?
16      A. Well, I was completely fine before they
17  started.  I had no wheezing.  I had no other
18  symptoms.  And then as soon as they started
19  cutting the carpet and installing the carpet, I
20  began to wheeze.  When I removed myself from the
21  building and got fresh air and was away from it
22  for awhile and after I had used my inhaler, I was
23  no longer wheezing.
24      The next day I went back to school and
25  upon entering the building, I began to wheeze and

86

1  it was the same --
2      Q.  So, when you were near the carpets, you
3  were wheezing; right?
4      A. Yes.
5      Q. Tell me how you concluded that you were
6  wheezing because of a latex allergy?
7      A. I don't know.
8      Q. How do you pay for your law school
9  tuition, if there in fact is tuition?
10      A. There is tuition and it is student
11  loans.
12      Q. 100 percent student loans?
13      A. Yes.
14      Q. And, what is the present level of your
15  student loan balance, if you know?  I know while
16  you are still in school you may not get monthly
17  statements but do you know how much you have in
18  fact borrowed?
19      A. No, I am not sure.
20      MR. JANSSEN:  I have no further
21      questions.
                    CROSS EXAMINATION
23  BY MS. BUONAIUTO:
24      Q. Ms. Hogan, you have never personally
25  used an Allegiance latex glove; correct?

87

1      A. I am not sure.
2      Q. Yesterday, we discussed all your
3  educational background, all of your employment
4  background.  You were asked many questions about
5  the gloves that you used during your education
6  and employment; correct?
7      A. Yes.
8      Q. And, you never once identified
9  Allegiance; correct?
10      A. I don't remember.
11      Q. You don't remember whether you
12  identified Allegiance yesterday?
13      A. I don't remember what I -- I don't
14  remember.
15      Q. As you sit here right now, do you have
16  any specific recollection of ever having used an
17  Allegiance latex glove?
18      A. I don't remember.
19      Q. So, the answer is no?
20      A. I don't remember.
21      Q. You do not now have a specific
22  recollection of using an Allegiance latex glove;
23  correct?
24      A. Right.
25      Q. Have you ever been exposed by other

88

1  people using the gloves, have you ever been
2  exposed to an Allegiance latex glove?
3      A. I don't know.  I don't remember.
4      Q. In your written questionnaire response
5  in this case, with respect to Stamford Hospital,
6  you indicated that you had used a different type
7  of glove, a non-latex glove in 1999; correct?
8      A. Yes.
9      Q. And, you indicated in your written
10  questionnaire response when asked what gloves you
11  were exposed to, you had indicated Allegiance.
12  Does that refresh your recollection?
13      A. Yes, the hospital was switching over I
14  think from mostly Medline products to other
15  products as well and it was around that time
16  frame when the hospital began to use Allegiance
17  gloves.
18      Q. In what time frame was that?
19      A. I think 1998, 1999, I am not entirely
20  sure right now.
21      Q. Other than your own personal
22  recollection, do you have any other basis in
23  which to state that Stamford Hospital was
24  switching from a certain type of glove to
25  Allegiance gloves during that time frame?

89

1    A. Yes, I called to double check which
2  brands of gloves were used and I was told that
3  they used both brands of gloves.
4    Q. When did you make that phone call?
5    A. I don't remember exactly.
6    Q. Can you give me your best estimate?
7    A. Probably when I was filling out the
8  questionnaire.
9    Q. I don't want you to guess so when you
10  say probably, that sounds to me like you are
11  guessing?
12    A. Well, then I don't know.
13    Q. Who did you speak to?
14    A. I don't remember.
15    Q. What department did you call?
16    A. I don't remember.
17    Q. What phone number did you call?
18    A. I don't remember.
19    Q. Do you have any notes of that
20  conversation?
21    A. No.
22    Q. And, what did you say during the
23  conversation and what was said to you?
24    A. I don't remember exactly.
25    Q. Generally?

90

1    A. I asked -- I think I spoke with the
2  central supply department or the -- I am not
3  sure, I don't remember.  I just remember being
4  told that both brands of gloves were being used.
5    Q. But, you don't remember who told you
6  that?
7    A. No, not right now.  No, I don't.
8    Q. Other than being told that, as you say,
9  you were told that, what other basis do you have
10  on which to state that Allegiance gloves were
11  being used at Stamford Hospital during the late
12  1998 or 1999 time frame as you just testified?
13    A. I don't -- I don't remember right now.
14    Q. What brand of Allegiance glove was used
15  at Stamford Hospital?
16    A. I don't remember right now.
17    Q. Were they examination gloves or
18  surgeon's gloves?
19    A. I don't remember right now.
20    Q. Were they powdered or non-powdered?
21    A. I don't remember right now.
22    Q. What type of packaging did they come in?
23    A. I don't remember right now.  I can't
24  remember.
25    Q. When you are saying right now, do you

91

1  have any recollection, are you saying that, you
2  know, if you took a moment and thought about it,
3  you could recall?  Do you have any --
4    A. I don't remember.  I don't know.
5    Q. Have you ever physically handled an
6  Allegiance latex glove product?
7    A. I don't know.
8    Q. Other than at Stamford Hospital, do you
9  have any recollection of ever using or being
10  exposed to an Allegiance latex glove in any other
11  setting?
12    A. No.
13    Q. You testified either earlier today or
14  yesterday that you have some friends at law
15  school?
16    A. Yeah.
17    Q. Who are those people?
18    A. Just my classmates.
19    Q. What are their names, people that you,
20  you know, would socialize with, or sit with
21  during breaks or go to the library with or things
22  of that nature?
23    A. Katherine Wall.
24    Q. Do you know where Katherine lives?
25    A. Bridgeport.

92

1    Q. Do you have her phone number with you?
2    A. I don't know it off the top of my head.
3    Q. Do you have it with you somewhere that
4  you could provide it to us?
5    A. At home.
6    Q. Who are some of the other friends that
7  you have at law school?
8    A. They are more acquaintances otherwise.
9  Katherine is the only one I really speak to
10  outside of school.
11    Q. So, do you socialize with Katherine
12  outside of school?
13    A. Yes.
14    Q. Have you ever been to her home?
15    A. Yes.
16    Q. Did you ask her to take any precautions
17  with respect to your latex allergy?
18    A. I don't remember.
19    Q. Just quickly going back to the questions
20  I was asking you about Allegiance gloves, do you
21  know whether the gloves that we were discussing
22  at Stamford Hospital were latex or non-latex?
23    A. I am sorry, can you repeat that, the --
24    Q. The gloves, the Allegiance gloves at
25  Stamford Hospital, were they latex or non-latex?

93

1    A. Both, I think.

2    Q. I don't want you to guess or to

3 speculate. If you know --

4    A. Then I don't know.

5    Q. You don't know. There were some

6 indications in Exhibit 3 which is your list of

7 events that mention a God son or a God daughter?

8    A. Um-uh.

9    Q. Are the God son and God daughter

10 siblings?

11    A. Yes.

12    Q. Who are their parents?

13    A. Denise Pete.

14    Q. And her husband's name?

15    A. Charles.

16    Q. Charles Pete as well?

17    A. Yes.

18       MS. BUONAIUTO:    I don't have any

19    further questions.

20       MR. JANSSEN:    Just a couple of follow

21    ups.

22          REDIRECT EXAMINATION

23 BY MR. JANSSEN:

24    Q.   Tell me a little more about the

25 situation that you just testified to about there

94

1 was a period of time when the hospital, Stamford

2 Hospital, was switching over brands of gloves.

3 You said that it was late 1998 or early 1999?

4    A. I don't know the dates exactly. In

5 thinking about it, I shouldn't speculate, I am

6 not sure when that was.

7    Q. Tell me what you remember about the

8 switch?

9    A. I just remember that there were

10 different boxes of gloves. The hospital was

11 trying out new gloves or whatever. I just

12 remember there being new gloves on the unit,

13 different gloves.

14    Q. Well, was there a period of time when

15 the old glove boxes disappeared and only the new

16 glove boxes were there, to your recollection?

17    A. I don't remember.

18    Q. So, it's possible before November of

19 1999 that the old glove brands had been

20 completely replaced; is that correct?

21    A. I don't know.

22    Q. When you were making these calls into I

23 think you said the products supply people, I am

24 sorry, I can't remember, at Stamford, when you

25 were doing the questionnaire, did you ask them

95

1 what gloves were being used then at the time of

2 the call?

3    A. I don't remember.

4    Q. Did you ask them what gloves were being

5 used in the period prior to November, 1999?

6    A. I am sorry, maybe I didn't understand.

7    Q. You said that -- you just testified that

8 you made a call or calls into product -- into

9 Stamford Hospital products supply people and that

10 you obtained information on your recollection

11 that confirmed your recollection about brands of

12 gloves. And, my question to you was, what is the

13 question that you asked these product people? In

14 other words, did you ask them what types of --

15 what brands of gloves were being used at the time

16 you made the call or back before November of

17 1999?

18    A. I asked them what brands of gloves were

19 used during the period that I worked there.

20    Q. But, you can't remember who it was that

21 you asked that; right?

22    A. Correct.

23       VIDEO OPERATOR: Going off the record at

24    11:36.

25       (Whereupon, a brief recess was taken.)

96

1       VIDEO OPERATOR: We are back on record

2    at 11:45. This begins videotape number two.

3 BY MR. JANSSEN:

4    Q.   Before the break we were discussing your

5 telephone call to this supply person at Stamford

6 when you were -- at or about the time you were

7 filling out the questionnaire. You don't know

8 who that person was?

9    A. No.

10    Q. You don't know if it was a man or a

11 woman?

12    A. I don't remember.

13    Q. You don't know whether that person was

14 there at Stamford when you were there or not?

15    A. No, I don't know.

16    Q. Did you discuss with that person the

17 switching of the brands of gloves that you

18 testified to today?

19    A. Yeah, I asked -- I made sure that --

20 well, I asked her for the entire time period.

21 And I was told that there were two brands of

22 gloves, that it was mainly one and then it

23 switched to the other and that's where I got the

24 information.

25    Q. Okay; so, you didn't quantify with them

97

1  as to when it was switched or not, you didn't
2  find that out?
3      A. I don't remember.
4      Q. Yesterday I was asking you about a
5  Dr. Borghesan, you couldn't remember a
6  Dr. Borghesan.  Dr. Borghesan is affiliated with
7  both Saint Vincent's and Bridgeport Hospital.
8  Does that refresh your recollection?
9      A. No.
10     Q. According to the insurance records from
11 a medical health care insurer by the name of PHS,
12 claims were submitted to PHS and were paid for
13 your visit to Dr. Borghesan.  Does that refresh
14 your recollection?
15     A. No.
16        MR. JANSSEN: Nothing further, thank you.
17        MS. BUONAIUTO:  Nothing.
18        MR. JANSSEN:  Counselor?
19        MR. BUTLER:  I have no questions,
20     reserve the right to read and sign.
21         (Whereupon, all parties ordered copies
22     of the transcript and the proceedings
23     concluded.)
24
25

98

1
2          C E R T I F I C A T E
3
4      I, Susan Wandzilak, Registered
5  Professional Reporter and Notary Public in and
6  for the State of Connecticut do hereby certify
7  that the foregoing pages are a true and accurate
8  transcription of my stenographic notes taken of
9  these proceedings.
10     I further certify that I am not related
11 nor in any way interested in the outcome of this
12 case.
13
14
15
16              SUSAN WANDZILAK
17
18
19
20
21
22
23
24
25

**EXHIBIT C**

NS

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| ANDREA HOGAN, | CASE No. 02-CV-3621 |
| Plaintiff, | E.D.P.A MDL No. 1148 |
| v. | August 13, 2003 |
| ALLEGIANCE CORPORATION, and MEDLINE INDUSTRIES, INC. | |
| Defendants. | |

### PLAINTIFF'S RESPONSES TO DEFENDANTS DOCUMENT REQUEST
### REVISED MERIT DISCOVERY FIRST SET

Plaintiff responds to the Revised Defendants Document Request First Set - Merit Discovery as set forth herein.

As discovery is ongoing, plaintiff reserves the right to supplement the responses to these requests as such information becomes available.

REQUEST NOS. 1-4.

Objections sustained.

REQUEST NO. 5.

All photographs which document, reflect, or show any injuries referenced in your Complaint or any other injuries you allege were caused, or exacerbated, by exposure to latex gloves.

Response:

I have no photos

REQUEST NO.6.

All x-rays or MRIs which document, reflect, or show any injuries referenced in your Complaint or any other injuries you allege were caused. or exacerbated by. exposure to latex gloves.

Response:

I have no X-rays or MRI's

REQUEST NO. 7.

All of your medical records from the date of your birth to the present.

Response:

Authorizations have been provided for all medical records.

REQUEST NO. 8.

All documents concerning your use of, or exposure to, latex gloves.

Response:

I have no documents that state my use of latex gloves.

REQUEST NO. 9.

All documents concerning your use of, or exposure to, gloves made from a material or substance other than latex.

Response:

None.

REQUEST NO. 10.

Deferred by agreement of counsel.

REQUEST NO. 11-12.

Objections sustained.

REQUEST NO. 13.

All documents reflecting the cost to you to participate in any employer-sponsored health insurance or dental insurance plans for the employers listed in your response to Defendants' Merits Interrogatory Nos. 8 and 11 to All Plaintiffs -- First Set.

Response:

I have no document in my possession.

REQUEST NO.14.

All records from any agency with which you have dealt concerning unemployment compensation.

Response:

I have never collected unemployment.

REQUEST NO. 15.

Objections sustained.

REQUEST NO. 16-18.

All federal and state tax returns, or authorizations for same, for the seven years preceding your diagnosis with latex allergy, to the present. If unavailable, social security earnings information, or signed authorizations for same, shall be given for the same period.

Response:

An authorization for tax returns has been provided.


REQUEST NO. 19.

Your calendars, appointment books, date books, journals, or similar appointment maintenance documents from January 1, 1975 to the present. Plaintiff may submit information to the Special Master for redaction of unnecessary information.

Response:

I do not keep calendars or appointment books.


REQUEST NO. 20.

All documents concerning any lawsuit, claim, or legal proceeding other than this one, including insurance claims, in which you have claimed or asserted that you suffered any injury or condition. Plaintiff may submit documents to the Special Master for redaction of unnecessary information.

Response:

Authorizations for all records, except attorney client documents, in my worker's compensation claim have been provided.

REQUEST NO. 21.

Objection sustained.

REQUEST NO. 22.

All documents in your possession or control relating to any latex gloves manufactured by

any defendant.

Response:

I have no documents related to the manufacturer's latex gloves

REQUEST NO. 23.

Objection sustained.

REQUEST NO. 24.

All communications prior to the date your Complaint was filed to or from your

employer(s) concerning latex allergy or, more specifically, any physical reactions you experienced

and attributed to latex allergy.

Response:

All such document are contained in the worker's compensation claim file and will be provided as

soon as they are obtained.

REQUEST NO. 25.

All documents obtained by you prior to the date your Complaint was filed, and all

documents written or created by you at any time concerning or referencing: (a) latex

hypersensitivity; (b) allergic reactions to latex; ( c) sensitivities to latex; (d) sensitivities and/or

reactions to additives and or chemicals in latex products. Plaintiffs will be allowed to identify

documents (such as an article in a magazine) rather than having to produce them for inspecrion and copying, so long as plaintiffs identify the documents with particularity and the documents are reasonably accessible by defendants.

Response:

All responsive documents will be provided.


REQUEST NO. 26.

All documents obtained by you prior to the date your Complaint was filed. and all documents written or created by you at any time, concerning your awareness or belief that the use of, or exposure to, latex gloves or other Iatex products could cause ;I physical reaction or manifestation of any kind.

Plaintiffs will be allowed to identify documents (such as an article in a magazine) rather than having to produce them for inspeciion and copying, so long as plaintiffs identify the documents with particularity and the documents are reasonably accessible by defendants.

Response:

I created no such documents


REQUEST NO. 27.

All documents obtained by you prior to the date your Complaint was filed, and all documents written or created by you at any time, discussing alleged risks of safety concerning exposure to latex containing products. or any alleged impact it may or may not have on humans, including but not limited to newspaper articles, scientific studies, health and fitness publications, union or other organizational newsletters, bulletins, or brochures.

Plaintiffs will be allowed to identify documents (such as an article in a magazine) rather than having to produce them for inspection and copying, so long as plaintiffs identify the documents with particularity and the documents are reasonably accessible by defendants.

Response:  All responsive documents will be provided.

REQUEST NO. 28.

All documents obtained by you prior to the date your Complaint was filed, and all documents written or created by you at any time, concerning any guidelines, procedures, requirements, recommendations. protocols. or precautions for the use of:

a) gloves or other barrier protection devices for the hands;

b) natural rubber latex;

c) latex gloves;

d) synthetic gloves;

e) vinyl gloves;

f) nitrile gloves; and

g) glove liners.

Plaintiffs will be allowed to identify documents (such as an article in a magazine) rather than having to produce them for inspection and copying, so long as plaintiffs identify the documents with particularity and the documents are reasonably accessible by defendants.

Response:

See response to request 27

REQUEST NO. 29.

All documents relating to ELASTIC or any other support or information group concerning latex allergies, including but not limited to communications from you, or received by you, from such groups concerning latex allergies.

Plaintiffs will be allowed to identify documents (such as an article in a magazine) rather than having to produce them for inspection and copying: SO long 3s plaintiffs identify the documents with particularity and the documents are reasonably accessible by defendants.

Response:

See response to request 27

REQUEST NO. 30.

Each and every issue of Latex Allergy News.

Plaintiffs should produce each issue of Latex Allergy News in his/her possession. custody or control. However. once 3 full set of Latex Allergy News have been produced to defendants. plaintiffs may respond simply by identifying those issues in their possession. custody or control.

Response:

I do not have any copies of latex allergy news.

REQUEST NO. 31.

All documents concerning latex allergy issued or distributed by public or private organizations. including without limitation. the 'American Nursing Association. the Food and Drug . Administration. the Center for Disease Control, the .knerican Medical Association. the

Occupational Safety and Health Administration. NOSH. the Health Industry Manufacturing

Association. and the .Academy of Immunology and Allergy.

Plaintiffs will be allowed to identify documents (such as an article in a magazine) rather

than having to produce them for inspection and copying, so long as plaintiffs identify the

documents with particularity and the documents are reasonably accessible by defendants.

Response:

I have no such documents.


REQUEST NO. 32.

Any documents concerning, constituting, or containing statements of witnesses, or any

persons purporting to have been witnesses, relating to any allegation of your Complaint.

Response:

I have no such documents


REQUEST NO. 33.

Such documents will be provided as part of the expert discovery.


REQUEST NO. 34.

Objections sustained.

REQUEST NO. 35-36.

Such documents will be provided as part of the expert discovery.

REQUEST NO. 37.

All documents not previously produced concerning ;my communications between you and anyone else regarding latex hypersensitivity, use of, or exposure to, latex glovest allergic reactions, this lawsuit. or any claim in this lawsuit.

Response:

I have no such documents

REQUEST NO. 38.

All pictures. photographs. audio tapes. videotapes. drawings. charts or maps not previously produced which were prepared or generated by any person and which refer directly or indirectly to the incidents. acts. or omissions described in your Complaint. including any recordings or references to of any media appearances you have made, or articles you have written. concerning latex gloves or latex allergy.

Response:

I have no such documents.

REQUEST NO. 39.

All documents concerning the injuries you allegedly suffered in connection with your use of, or exposure to, latex gloves.

Response:

Authorizations for all medical records have been produced.

REQUEST NO. 40.

All documents concerning any damages which you claim or will claim in this action.

Response:

I do not have receipts for medications, most of which were covered under by worker's compensation.

REQUEST NO . 41 .

Copies of W-2s for the earnings history identified by you in response to Defendants' Merits Interrogatory Nos. 8 and 11 to All Plaintiffs -- First Set.

Response:

Authorizations for tax records have been provided.

REQUEST NO. 42.

All documents concerning my loss of earnings claim alleged in your Complaint.

Response:

Payroll records may be obtained from my employers.

REQUEST NO. 43.

All documents concerning any benefits received from any of your employers. including, but not limited to 401 K pension plans, stock options. profit sharing, insurance (including health, dental and life), etc. Such documentation should include but not be limited to. documents necessary to determine the present value of you will receive my identified benefits.

Response:

Please see response to request 42

REQUEST NO. 44.

All documents concerning any matching contributions that have been made or will be made by any of your past or present employers pursuant to any type of benefits plan. including but not limited to, a 401 K pension plan. profit sharing, or stock option plan.

Response:

Stamford Hospital offered no such benefits.

REQUEST NO. 45.

Objections sustained.

REQUEST NO. 46.

All documents concerning any efforts taken by you, or on your behalf, to mitigate any loss of earnings damages alleged in your Complaint including, but not limited to, employment application forms, letters, and resumes.

Response:

See worker's compensation file.

REQUEST NO. 47.

All documents concerning any education or training expenses incurred by you in order to pursue different employment or an alternative career track because of your alleged latex allergy.

Response:

Responsive documents will be produced.

REQUEST NO. 48 .

All documents concerning your claim that you are or for 3 period of time were, unable to work in the health care profession as a result of injuries alleged in your Complaint.

Response:

Authorization for medical files have been produced.

REQUEST NO. 49.

All documents concerning any allergy from which you have ever suffered or any allergic reaction you have ever experienced

Response:

Authorization for medical files have been produced.

REQUEST NO. 50.

All documents concerning any Type I latex allergic response you have experienced.

Response:

Authorization for medical files have been produced.

Dated: Darien, Connecticut
       August 13, 2003

Timothy F. Butler, Esq. (CT Fed #15537)
Tibbetts Keating & Butler, LLC
Attorneys for Plaintiff
43 Corbin Drive
Darien, CT 06820
(203) 656 - 1066
Fax (203) 656 - 2573